UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE V.,[1] | ) | CIVIL ACTION NO. 4:22-CV-1430 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| MARTIN O'MALLEY, *Social Security* | ) | |
| *Commissioner*,[2] | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Jose V., an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before us upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the Court finds the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision will be VACATED, and this case will be remanded to the Commissioner for further proceedings.

## II.    BACKGROUND AND PROCEDURAL HISTORY

This is Plaintiff's second application. Plaintiff's First application was denied at the initial level on July 14, 2012. (Admin. Tr. 925, Doc. 8-14, p. 16). Plaintiff did not pursue his first application further.

On May 31, 2013, Plaintiff protectively filed a second application for disability insurance benefits under Title II of the Social Security Act. (Doc. 11, p. 2). In the second application, Plaintiff alleged he became disabled on February 15, 2009. (Admin. Tr. 925, Doc. 8-14, p. 16). However, Administrative Law Judge Therese Hardiman (the "ALJ"), whose decision it is we review today, found that by alleging this date Plaintiff was impliedly requesting a reopening of his first application. *Id*. The ALJ declined to do so as Plaintiff failed to establish any grounds for reopening. *Id*. As such, the ALJ evaluated Plaintiff's second application using the day after the last denial determination of his first application, July 15, 2012. *Id*.

On July 15, 2012, Plaintiff was 44 years old. Plaintiff alleges disability due to: "back injury, lower back, effects both legs." (Admin. Tr. 160; Doc. 8-6, p. 6). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, remember, complete tasks, concentrate and use his hands. (Admin. Tr. 185; Doc. 8-6, p. 31). Plaintiff has a limited education, completing high school through the ninth grade in Mexico). (Admin. Tr. 940, 955; Doc. 8-14, p. 31; Doc. 8-14, p. 46). Therefore, his education is considered "limited." Before the onset of his impairments, Plaintiff worked as a hand packager and glass cut off tender. (Admin. Tr. 940; Doc. 8-14, p. 31).

On October 4, 2013, Plaintiff's second application was denied at the initial level of administrative review. (Admin. Tr. 107-111; Doc. 8-4, pp. 4-8). On October 13, 2013, Plaintiff requested an administrative hearing. (Admin. Tr. 105; Doc. 8-4, p. 2).

On March 20, 2015, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Michelle Wolfe ("ALJ Wolfe") (Admin. Tr. 73-92; Doc. 8-2, pp. 74-93). On March 27, 2015, ALJ Wolfe issued a decision denying Plaintiff's second application for benefits. (Admin. Tr. 29-39; Doc. 8-2, pp. 30-40). On April 21, 2015, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 19; Doc. 8-2, p. 20).

On May 26, 2016, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 8-2, p. 2).

On July 5, 2016, Plaintiff filed a civil action court against then Acting Commissioner of Social Security Carolyn W. Colvin.[3] (Admin Tr. 708-710; Doc. 8-9, pp. 30-32). Acting Commissioner Colvin filed an uncontested Motion to Remand, which the district court granted on November 10, 2016. (Admin. Tr. 718; Doc. 8-9, p. 40). The Appeals Council issued its remand order on April 28, 2017. (Admin. Tr. 720-722; Doc. 8-9, pp. 42-44).

On November 20, 2017, Plaintiff, assisted by his counsel, appeared and testified during the first remand hearing before ALJ Wolfe. (Admin. Tr. 652-679; Doc. 8-8, pp. 57-84). On June 5, 2018, ALJ Wolfe issued a second decision denying Plaintiff's application for benefits. (Admin. Tr. 614-627; Doc. 8-8, pp. 19-32). On June 20, 2018, Plaintiff requested that the Appeals Council review the ALJ's decision. (Admin. Tr. 787; Doc. 8-10, p. 60).

On April 8, 2019, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 597-599; Doc. 8-8, pp. 2-4).

On May 29, 2019, Plaintiff filed a second civil action in this court.[4] (Doc. 11, p. 3). On April 6, 2020, that action was remanded because the ALJ was

---

[3] *Vasquez v. Colvin*, No. 3:16-CV-01389 (M.D. Pa. July 5, 2016).
[4] *Vasquez v. Berryhill*, No. 1:19-CV-0913 (M.D. Pa. May 29, 2019).

unconstitutionally appointed. (Admin. Tr. 1017-1020; Doc. 8-15, pp. 2-5). The Appeals Council issued its remand order on August 8, 2021. (Admin. Tr. 1026; Doc. 8-15, p. 11).

On February 3, 2022, Plaintiff, assisted by his counsel, appeared and testified during a second remand hearing before a different Administrative Law Judge, Therese Hardiman (the "ALJ"). (Admin. Tr. 951-975; Doc. 8-14, pp. 42-66). On April 13, 2022, the ALJ issued the third ALJ decision denying Plaintiff's application for benefits. (Admin. Tr. 925-943; Doc. 8-14, pp. 16-34). On May 9, 2022, Plaintiff requested that the Appeals Council review the ALJ's decision. (Admin. Tr. 1213-1220; Doc. 8-16, pp. 153-160).

On July 26, 2022, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 911-914; Doc. 8-14, pp. 2-5).

On September 14, 2022, Plaintiff filed civil action in this court requesting judicial review of the third ALJ decision denying Plaintiff's second application for benefits. (Doc. 1). In his complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the law. (Doc. 1). As relief, Plaintiff requests that the court reverse and set aside the Commissioner's final decision or remand this case for further proceedings. (Doc. 1, p. 1).

On November 14, 2022, the Commissioner filed an answer. (Doc. 7). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 7). Along with his answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 8).

Plaintiff's Brief, (Doc. 11), the Commissioner's Brief, (Doc. 12), and Plaintiff's Reply, (Doc. 13), have been filed. This matter is now ready to decide.

## III.    LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process.

### A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[5] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6] Substantial evidence is

---

[5] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[6] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

less than a preponderance of the evidence but more than a mere scintilla.[7] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[8] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[9] In determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[10]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135

---

[7] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[8] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[9] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[10] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[11]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[12] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[13]

---

[11] *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).

[12] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[13] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[14]

## B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[15] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[16] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under

---

[14] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[15] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

[16] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

retirement age, and became disabled prior to the date on which he or she was last insured.[17]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[18] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[19]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[20] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[21]

---

[17] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).
[18] 20 C.F.R. § 404.1520(a).
[19] 20 C.F.R. § 404.1520(a)(4).
[20] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).
[21] 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[22]  Once the claimant meets this burden, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[23]

## IV.    DISCUSSION

Plaintiff raises the following issues in his brief:

(1)    The ALJ's rejection of the treating source opinion is woefully deficient and not supported by substantial evidence.

(2)    The ALJ's rejection of the medical expert opinion is based upon lay reinterpretation of the evidence.

(3)    The ALJ's analysis of Plaintiff's ability to communicate in English applied new rules which were not in effect when Plaintiff filed his claim; the Commissioner of Social Security is not authorized to issue a rule that applies retroactively to claims filed before the rule's effective date.

(Doc. 11, p. 8). The Court begins our analysis by summarizing the ALJ's findings, then will address whether substantial evidence supports the ALJ's decision.

---

[22] 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.
[23] 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

**A.     THE THIRD ALJ DECISION DENYING PLAINTIFF'S APPLICATION**

In her April 2022 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through March 31, 2014. (Admin. Tr. 925; Doc. 8-14, p. 16). Then, Plaintiff's second application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between July 15, 2012 (the date after the last denial determination) and March 31, 2014 (Plaintiff's date last insured) ("the relevant period"). (Admin. Tr. 928; Doc. 8-14, p. 19).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: degenerative disc and joint disease of the lumbar spine and lumbar radiculopathy, and the following non-severe impairments: obesity, laceration and repair of left first and second digit. (Admin. Tr. 928-29; Doc. 8-14, pp. 19-20).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 932-934; Doc. 8-14, pp. 23-25).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) except:

> the claimant could occasionally push and/or pull with his bilateral lower extremities. The claimant could occasionally balance, stoop, kneel, crawl, and climb ramps and stairs, but never climb ladders, ropes, and scaffolds. The claimant would have needed to avoid concentrated levels of vibrations and hazards, defined as heights.

(Admin. Tr. 934; Doc. 8-14, p. 25).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 940; Doc. 8-14, p. 31).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 940-943; Doc. 8-14, pp. 31-34). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: Hand Bander (DOT 920.687-026); Inspector/Hand Packager (DOT 559.687-074); and Assembler, Small Product II (DOT 739.687-030). (Admin. Tr. 941; Doc. 8-14, p. 32).

**B.    WHETHER THE ALJ'S REJECTION OF THE TREATING SOURCE OPINION IS DEFICIENT AND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff's first argument is that the ALJ's rejection of Plaintiff's treating physician's, Dr. Jacob, September 2014 opinion[24] is deficient and not supported by substantial evidence.

It is well settled that "[a]n ALJ should give treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."[25] "A treating physician's opinion is then afforded controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence [in the claimant's] case record."[26] "The Third Circuit has held that a medical opinion from a non-treating, non-examining source who did not review a complete record was 'not substantial.'"[27]

---

[24] Dr. Jacob also provided an opinion in August 2012. Although Plaintiff does not concede the rejection of the 2012 opinion was supported by substantial evidence, "the rejection of the 2014 opinion is the primary issue in this case." (Doc. 11, p. 9 n.1).

[25] *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)) (internal quotation marks omitted).

[26] *Simmonds v. Astrue*, 872 F.Supp.2d 351, 358 (D. Del. 2012) (quoting *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

[27] *Higgins v. Colvin*, No. 1:15-CV-00594-YK-GBC, 2016 WL 5955762 (M.D. Pa. Sept. 21, 2016) (quoting *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000)), *report*

Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: (1) examining relationship; (2) treatment relationship, including the length of the treatment relationship, frequency of examination, and the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors the claimant brings to the ALJ's attention.[28]

The ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[29] This principle applies with particular force to the opinion of a treating physician.[30] "Contradictory evidence is required in order for an ALJ to reject a treating physician's opinion outright."[31] "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments,

---

*and recommendation adopted*, No. 1:15-CV-00594, 2016 WL 5941744 (M.D. Pa. Oct. 13, 2016)

[28] 20 C.F.R. § 404.1527(c).

[29] *Cotter v. Harris*, 642 F.2d 700, 704 (1981).

[30] *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

[31] *Troxell v. O'Malley*, No. 21-5152, 2024 WL 1163527, at *5 (E.D. Pa. Mar. 18, 2024).

speculation or lay opinion."[32] "Where the [ALJ] is faced with conflicting evidence, [s]he must adequately explain in the record [her] reasons for rejecting or discrediting competent evidence."[33] "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason."[34] "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects."[35]

Here, the ALJ rejected Dr. Jacob's 2014 opinion, writing that:

Dr. Jacob also provided an assessment on September 23, 2014, indicating that claimant could perform only a range of sedentary work with lifting limited to 5-10 pounds, standing /walking limited to one hour, and sitting between 2-6 hours in an 8-hour day (Exhibit 6F). This significantly less than sedentary assessment occurred after the claimant's date last insured, March 31, 2014, had lapsed, does not set forth in the opinion specific signs or laboratory findings to support each of the limitations opined during the period being adjudicated, is neither well support [sic] and consistent with the evidence during this period and is therefore assigned no weight and is not persuasive in establishing the claimant's residual functional capacity on or before the relevant period. Additionally, longitudinally, the balance of the record does not support the nature and extent of limitation opined by the doctor during the period under consideration as more fully set forth above.

---

[32] *Morales*, 225 F.3d at 317 (quoting *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Kent*, 710 F.2d at 115) (internal quotation marks omitted.

[33] *Benton for Benton v. Bowen*, 820 F.2d 85, 88 (3d Cir. 1987). *See also Sykes v. Apfel*, 228 F.3d 259, 266 (3d Cir. 2000); *Schwartz v. Halter*, 134 F.Supp.2d 640, 651 (E.D. Pa. 2001).

[34] *Plummer*, 186 F.3d at 429 (quoting *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993)) (internal quotation marks omitted).

[35] *Plummer*, 186 F.3d at 429.

(Admin. Tr. 938-39; Doc. 8-14, pp. 29-30).

Plaintiff asserts three reasons why the ALJ's articulation of why she rejected Dr. Jacob's 2014 opinion is deficient and not supported by substantial evidence:

(1)    "First, the ALJ relies, at least in part, upon the fact that the opinion post-dates the date last insured."

(2)    "Second, the ALJ concludes that the opinion does not set forth in the opinion specific signs or laboratory findings to support each of the limitations opined during the period adjudicated. (Tr. 939). That is a mischaracterization of the record."

(3)    "Third, the ALJ concludes that the opinion was neither well supported or consistent with the evidence during the relevant period. (Tr. 939). However, the problem for the ALJ is that the ALJ failed to explain *how* [sic] it is not supported and *how* [sic] it is not consistent with the evidence."

(Doc. 11, pp. 10-12).

As to the first argument, Plaintiff asserts that the ALJ used the fact that Dr. Jacob's 2014 opinion was issued after the date last insured as a reason to reject the opinion without "acknowledging that retrospective opinions are permitted where the underlying objective findings and underlying disability occurred prior to the date last insured." (Doc. 11, p. 10). In support of this argument, Plaintiff cites to numerous out of district cases. (Doc. 11, pp. 10-11). The Commissioner does not directly respond to this argument, and instead argues generally that the ALJ properly supported her rejection of Dr. Jacob's 2014 opinion, regardless of whether she considered when the opinion was provided. (Doc. 12, pp. 17-18). In reply, Plaintiff

asserts that the Commissioner failed to rehabilitate the ALJ's evaluation of the opinion evidence and repeats the ALJ's defective analysis. (Doc. 13, p. 2).

We agree with Plaintiff that the mere fact that Dr. Jacob's 2014 opinion was issued (less than six months) after the date last insured does not support the rejection of that opinion. In *Fargnoli*, the Third Circuit explicitly instructed the ALJ to discuss the significance of opinions rendered after the date last insured:

> The record also includes the treatment notes and opinions of physicians treating or examining Fargnoli, or reviewing his medical records, after his date last insured (December 31, 1990). Because these treatment notes and opinions are for a time period after Fargnoli's last insured date and, with the exception of one treatment note from Dr. Karpin, were not mentioned in the ALJ's opinion, we do not know what significance, if any, they had in the ALJ's determination. On remand, the ALJ should discuss the significance of these records and whether he is relying on any of them in reaching his determination.[36]

Accordingly, the fact that Dr. Jacob's 2014 opinion was issued after the date last insured does not support the rejection of that opinion.

Plaintiff's second argument is that the ALJ's rejection of Dr. Jacob's 2014 opinion is defective because she mischaracterized the record when she stated that Dr. Jacob did not set forth in the opinion specific signs or laboratory findings supporting his opinion. (Doc. 11, pp. 11-12). The Commissioner does not directly respond to these arguments. Instead, he summarizes the ALJ's analysis and asserts that the ALJ's decision is supported by substantial evidence. (Doc. 12, pp. 12-22).

---

[36] *Fargnoli v. Massanari*, 247 F.3d 34, 38 n.3 (3d Cir. 2001).

In reply, Plaintiff argues that the Commissioner failed to rehabilitate the ALJ's evaluation of the opinion evidence and repeats the ALJ's defective analysis. (Doc. 13, pp. 2-4).

The Court agrees that the ALJ mischaracterized the record when she found that Dr. Jacob's 2014 opinion failed to set forth specific signs and laboratory findings to support the limitations opined, though on a different basis. The ALJ wrote that Dr. Jacob's 2014 opinion "does not set forth in the opinion specific signs or laboratory finding to support each of the limitations opined during the period being adjudicated . . . ." (Admin Tr. 939; Doc. 8-14, p. 30). This is simply untrue.

In the 2014 opinion, questions 1-4 asked Dr. Jacob to opine on Plaintiff's lifting, carrying, standing, walking, sitting, pushing and pulling abilities. (Admin. Tr. 437-38; Doc. 8-7, pp. 226-227). Dr. Jacob responded to those questions. Question five asked "what medical/clinical finding(s) and diagnostic tests support your conclusions in items 1-4 above?" (Admin. Tr. 438; Doc. 8-7, p. 227). In response, Dr. Jacob wrote, "MRI $L_5$-$S_1$ stenosis," and while the handwriting is difficult to read, it appears he cited to the EMG study that showed "neurological radiculopathy." *Id*. Even if he did not cite to the EMG, he still cited to Plaintiff's neurological radiculopathy to support his opined limitations. Therefore, the ALJ's reasoning that Dr. Jacob's 2014 opinion was not supported because he did not cite "specific signs or laboratory findings" is erroneous.

Third, Plaintiff argues that the ALJ's rejection of Dr. Jacob's 2014 opinion was not supported by substantial evidence because the ALJ failed to articulate how that opinion was not supported by or consistent with the record. (Doc. 11, p. 12). Plaintiff argues,

> the ALJ concludes that the opinion was neither well supported or consistent with evidence during the relevant period. (Tr. 939). However, the problem for the ALJ is that the ALJ failed to explain *how* it is not supported and *how* it is not consistent with the evidence. Plaintiff takes supportability and consistency in turn.
>
> As to supportability, the ALJ failed to consider Dr. Jacob's relevant records showing tenderness (Tr. 368-372), limited ROM (Tr. 368-372), abnormal EMG establishing radiculopathy (Tr. 503), palpable muscle spasm (Tr. 536-543), antalgic gait (Tr. 536-543), positive Patrick's on the left (Tr. 544), and arthritic joint dysfunction. (Tr. 544).
>
> It is unclear how these objective findings do not support the opinion. The ALJ provides no analysis for how these findings are not supportive. Why is it that these findings – including an abnormal EMG – do not support a limitation to lifting 5-10 pounds, standing /walking limited to one hour, and sitting between 2-6 hours in an 8-hour day? Plaintiff and the Court are left to wonder how the ALJ arrived at this conclusion.
>
> As to consistency, the ALJ provides no analysis other than a conclusory statement that that the opinion is not consistent with the evidence. However, it is well established that an ALJ's conclusory statement that evidence is inconsistent with an opinion is sufficient to reject that opinion. Batdorf v. Colvin, 206 F. Supp. 3d 1012, 1023 (M.D. Pa. Aug. 26, 2016) (citing Gross v. Comm'r Soc. Sec., No. 15-2764, 2016 U.S. App. LEXIS 12042, 2016 WL 3553259, at *5 (3d Cir. June 30, 2016)).
>
> Citing the Third Circuit's decision in Gross, the Batdorf Court held that an ALJ must do more than acknowledge inconsistent evidence--he must identify conflicting records with specificity and provide reasons for crediting certain objective clinical findings over others. Batdorf, 206 F. Supp. 3d at 1023. This standard is critical because the Court cannot

conduct a meaningful review without knowing which evidence the ALJ believed to conflict. This error is particularly problematic here as the evidence cited above contained within Dr. Jacob's records does not conflict with his opinion. As in Batdorf, the ALJ's rejection of Dr. Jacob's opinion is not supported by substantial evidence as the ALJ failed to identify any conflicting or inconsistent evidence with specificity.

Finally, the ALJ found that "the balance of the record does not support the nature and extent of the limitation opined by the doctor during the period under consideration." (Tr. 939). This conclusion suffers from the same error discussed above. The ALJ provides no explanation as to *how* the record does not support the extent of the limitations. Plaintiff cited a number of objective findings in the record – including positive EMG findings and positive MRI findings – which would seemingly support lifting/standing/walking/sitting limitations. So why is it that the record is not supportive of the opinion? Without an explanation, Plaintiff and the Court are left to wonder how the ALJ arrived at this conclusion.

(Doc. 11, pp. 12-14). The Commissioner does not directly respond to this argument. Instead, he summarizes the ALJ's analysis and asserts that the ALJ's decision is supported by substantial evidence. (Doc. 12, pp. 12-22). Plaintiff argues in reply that the Commissioner failed to rehabilitate the ALJ's evaluation of opinion evidence and repeats the ALJ's defective analysis. (Doc. 13, pp. 2-4).

The Court agrees that the ALJ's conclusory statements that Dr. Jacob's 2014 opinion was not supported by or consistent with the record is not substantial evidence supporting the ALJ's rejection of that opinion.

Regarding supportability, the applicable regulation explains, "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly

medical signs and laboratory findings, the more weight we will give that medical opinion."[37] As to consistency, the applicable regulation explains, "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."[38]

As explained above, "where [an ALJ] is faced with conflicting evidence, [s]he must adequately explain in the record [her] reasons for rejecting or discrediting competent evidence."[39] Where evidence conflicts, the ALJ "cannot reject evidence for no reason or for the wrong reason."[40] "Such a conflict requires an ALJ to do more than acknowledge it–[s]he must identify conflicting records with specificity and provide reasons for crediting certain objective clinical findings over others."[41] The ALJ is required to "give some reason for discounting the evidence she rejects."[42]

---

[37] 20 C.F.R. § 404.1527(c)(3).

[38] 20 C.F.R. § 404.1527(c)(4).

[39] *Benton for Benton v. Bowen*, 820 F.2d 85, 88 (3d Cir. 1987). *See also Sykes v. Apfel*, 228 F.3d 259, 266 (3d Cir. 2000); *Schwartz v. Halter*, 134 F.Supp.2d 640, 651 (E.D. Pa. 2001).

[40] *Plummer*, 186 F.3d at 429 (quoting *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993)) (internal quotation marks omitted).

[41] *Id*.

[42] *Plummer*, 186 F.3d at 429.

As to supportability, the ALJ identifies conflicting evidence but stops short of explaining why she credits "certain objective clinical findings over others."[43] In the section of her decision discussing medical opinions, the ALJ writes that,

> [t]he claimant treated with Dr. Emanual Jacob, M.D., a pain medication specialist and licensed acupuncturist, during the relevant period for his back pain. Upon examination, although Dr. Jacob found tenderness and limited range of motion, with intermittent subjective complaints of paresthesias in the lower limbs, there were no longitudinal motor nor sensory deficits noted and the claimant continually was found to have a stable gait (Exhibits 3F/107-142 and 7F/82-98). The claimant's gait was only noted to be antalgic on two occasions in August 2012 and December 2013 (Exhibits 3F/112 and 7F/95). The claimant was not prescribed, nor is noted to have required, any assistive device for weight bearing, ambulation or balance. The claimant received continued acupuncture treatment and reported improvement in his pain relief (Exhibits 3F/128, 140 and 7F/82-98).

(Admin. Tr. 937-38; Doc. 8-14, pp. 28-29). Here, the ALJ notes Dr. Jacob's findings of tenderness, limited range of motion, and on two occasions, antalgic gait. *Id*. The ALJ then notes there were no longitudinal sensory or motor deficits noted, that Plaintiff continually had a stable gait and was not prescribed an assistive device for weight bearing, walking or balance. *Id*. It appears the ALJ believes these two sets of findings conflict due to her use of the word "although." *Id*. It is not enough, however, for the ALJ to acknowledge this conflict.[44] Instead, the ALJ "must provide reasons

---

[43] *Batdorf v. Colvin*, 206 F.Supp.3d 1012, 1023 (M.D. Pa. 2016) (citing *Gross v. Comm'r of Soc. Sec.*, 653 F.App'x 116, 121-22 (3d Cir. 2016)).

[44] *Batdorf*, 206 F.Supp.3d at 1023.

for crediting certain objective clinical findings over others."[45] The ALJ fails to do that here. The ALJ does not provide any reasons why she credited the second group of findings over the first.

> The ALJ wrote that Dr. Jacob's examination of Plaintiff on August 23, 2012,
>
> showed palpable muscle spasm, tenderness, limited motion, and an antalgic gait, but no sensory nor motor deficits (Exhibit 3F/112). Additionally, MRI testing does not reflect any findings of significant nerve root compression or compromise, or canal stenosis (Exhibit 1F/5-6). During this period Dr. Jacob provided routine and conservative treatment. The claimant was successfully provided acupuncture treatment (Exhibit 3F/112-115). At his next examination, in October 2021, Dr. Jacob noted the claimant to have a stable gait (Exhibit 3F/120).

(Admin. Tr. 938-39; Doc. 8-14, pp. 29-30). The ALJ summarizes that Dr. Jacob's examination "showed palpable muscle spasm, tenderness, limited motion and an antalgic gate." *Id*. The ALJ then summarizes that the examination did not show sensory or motor deficits, and that at his next examination Plaintiff had a stable gait. *Id*. The ALJ seems to acknowledge a conflict between the two sets of findings with the use of the word "but." *Id*. But once again, acknowledging this conflict is not enough.[46] The ALJ "must provide reasons for crediting certain objective clinical findings over others."[47] The ALJ again fails to do that here, providing no reasons why she credited the second mentioned group of findings over the first mentioned

---

[45] *Id*.

[46] *Id*.

[47] *Id*.

group of findings. Thus, the ALJ does not adequately articulate how Dr. Jacob's 2014 opinion is not supported by the record.

As to consistency, the ALJ makes the broad assertion that Dr. Jacob's 2014 opinion is not "consistent with the evidence" during the relevant period. (Admin. Tr. 939; Doc. 8-14, p. 30). This assertion "inherently points to a conflict between Dr. [Jacob's] physical examination findings and other clinical examination findings."[48] Again, "[s]uch a conflict requires an ALJ to do more than acknowledge [them]–[s]he must identify conflicting records with specificity and provide reasons for crediting certain objective clinical findings over others."[49] Here, the ALJ simply fails to identify conflicting records and explain her reasons for crediting certain findings over others. Accordingly, the ALJ does not adequately articulate how Dr. Jacob's 2014 opinion is not consistent with the record.

In sum, the ALJ's rejection of Dr. Jacob's 2014 opinion is not supported by substantial evidence. Before deciding whether remand is appropriate, the Court must evaluate whether this error is harmful.[50] To decide whether an error is harmful or harmless, courts consider whether remand might reasonably lead to a different

---

[48] *Id*.

[49] *Id*.

[50] *Minarsky v. Kijakazi*, No. 1:23-CV-1000, 2024 WL 3993220, at *11 (M.D. Pa. Aug. 29, 2024) (conducting a harmless error analysis after finding that the ALJ's persuasiveness analysis was inadequate).

result.[51] If there is a reasonable possibility that it could, the error at issue is harmful. An ALJ's failure to adequately articulate the medical opinion analysis is not always harmful error.[52] Courts have found, however, that such an error is harmful where the result could be different if the opinions at issue were given full consideration.[53] If credited, the limitations opined by Dr. Jacob in 2014, particularly the limitations on standing, sitting and walking, would result in a different outcome according to the VE's testimony. We therefore conclude that ALJ's error was harmful.

This Court has the authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing."[54] However, benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits."[55] Plaintiff does not argue that this test has been met. Indeed, Plaintiff closes his Brief in Support by requesting the Court

---

[51] *Id.* (citing *Timothy J.B. v. O'Malley*, No. 4:22-CV-1036, 2024 WL 968875, at *4 (M.D. Pa. Mar. 6, 2024)).

[52] *Caitlin S.*, 2024 WL 2873390, at *6 (finding that the substance of the regulation was not violated where the ALJ engaged in a thorough review of the medical evidence and noted at several places how the objective evidence either did, or did not, support particular functional limitations).

[53] *See e.g.*, *Minarsky*, 2024 WL 3993220, at *11 (remanding due to an error in the ALJ's persuasiveness articulation because remand might lead to a different result if the medical opinions were found persuasive after given full consideration).

[54] 42 U.S.C. § 405(g).

[55] *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (citing *Podedworny v. Harris*, 745 F.2d 210, 222 (3d Cir. 1984)).

"grant a remand." (Doc. 11, p. 24). The Court therefore finds that the appropriate measure is to remand this matter for further proceedings. [56]

### C.   PLAINTIFF'S REMAINING ARGUMENTS

Plaintiff's remaining arguments challenge the ALJ's rejection of the medical expert opinion and the ALJ's analysis of Plaintiff's ability to communicate in English at step five. Having concluded for the above-stated reasons that it is appropriate to remand this case for further proceedings on different grounds, we will not address Plaintiff's other arguments, as a remand may produce different results on these claims, making discussion of them moot.[57] Plaintiff is free, however, to raise these issues during the proceedings on remand.

## V.   CONCLUSION

Accordingly, for the foregoing reasons, the Commissioner's final decision will be reversed, and this case will be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). An appropriate order will be issued.

Date: October 25, 2024                    BY THE COURT

                                          *s/William I. Arbuckle*
                                          William I. Arbuckle
                                          U.S. Magistrate Judge

---

[56] The Court takes no position on whether the ALJ should have given this opinion any weight, or more broadly whether the ALJ should have granted Plaintiff's application for benefits.

[57] *Wheaton v. Saul*, No. 3:19-CV-01920, 2021 WL 736164 (M.D. Pa. Feb. 25, 2021).